UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICINIO D.M.V.,[1]<br>Petitioner,<br>v.<br>TODD BLANCHE, et al.,<br>Respondents. | No. 1:26-cv-06750-TLN-CSK<br>A# 201-581-729<br>**ORDER** |

This matter is before the Court on pro se Petitioner Patricinio D.M.V.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an opposition and supplement. (ECF Nos. 6, 10.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual Background

This matter arises out of Petitioner's challenge to his civil immigration detention. About twenty-six years ago, Petitioner first entered the United States without encountering immigration authorities. (ECF No. 1 at 2.) Over the last two and a half decades, Petitioner established a life in the United States. (*See id.*) He started a construction company, married a U.S. citizen, and became a father to two daughters. (*Id.*) Petitioner is the primary financial support for his children. (*Id.*) He applied for immigration relief that is still pending and the government has granted him work authorization. (*Id.*) There is no evidence in the record that Petitioner has ever been convicted of a crime. (ECF No. 6 at 21–29.) He is not subject to an order of removal. (*Id.* at 7.)

In 2020, Petitioner left the United States for a short period and, upon his return, immigration authorities detained Petitioner. (*Id.*) Petitioner then voluntarily departed the country. (*Id.* at 1.) On December 14, 2020, Petitioner returned to the United States and immigration authorities again detained him; authorities necessarily determined Petitioner did not pose a danger or flight risk, then released Petitioner on his own recognizance into the United States. (*Id.*; ECF No. 1 at 2.)

On July 31, 2026, U.S. Immigration and Customs Enforcement ("ICE") agents conducted a targeted traffic stop of Petitioner. (ECF No. 6 at 5.) Agents wrestled Petitioner to the asphalt. (*Id.*) Petitioner suffered physical injuries. (*Id.*) Emergency services arrived on the scene and Petitioner was transported to a local hospital for medical attention. (*Id.*) ICE arrested Petitioner without any explanation, notice, or hearing. (ECF No. 1 at 2; ECF No. 6; ECF No. 10.) Although government records show the arrest was premeditated, Respondents cannot supply any administrative warrant for the arrest. (*See* ECF No. 6 at 5; ECF No. 10.) Thereafter, Petitioner was detained at the Central Valley Annex detention facility. (ECF No. 1 at 3.)

Subsequent to Petitioner's arrest, it appears Respondents did not provide Petitioner with any initial custody determination. (ECF No. 10 (no Form I-286 for Petitioner).) Petitioner has been detained over seven weeks without any custody hearing. (ECF No. 1.) Petitioner now challenges the constitutionality of his detention. (*Id.*)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

Petitioner claims his detention without pre-deprivation notice and a hearing violates the Fifth Amendment. (ECF No. 1 at 11.) Respondents acknowledge that 8 U.S.C. § 1226(a) governs Petitioner's detention, he is entitled to a custody hearing, and they do not dispute that he has not been provided one. (ECF No. 6 at 1 (citing *Rodriguez Vazquez v. Bostock*, 2026 WL 2196424 (9th Cir. July 30, 2026)).)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

the question remains what process is due.”).

A. Liberty Interest

“Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.” *Zadvydas*, 533 U.S. at 690. “Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.” *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). An individual’s liberty interest may be strengthened over time. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

Petitioner has a clear liberty interest in remaining free from detention. “Even where the revocation of a person’s freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause.” *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey*, 408 U.S. at 481–82). Petitioner has lived in the country for nearly three decades in the same community, during which time he has established a residence, created a business, and started a family. Petitioner has also applied for immigration relief that is still pending. In turn, the government supported Petitioner’s liberty by granting him a work permit. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987)) (“Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.”). Additionally, in 2020, the government released Petitioner into the country on his own recognizance. Accordingly, Petitioner has a clear interest protected by the Due Process Clause.

B. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) “the private interest that will be affected by the official action;” (2) “the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;” and (3) “the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner has now been detained for over seven weeks, separated from his community and family, and unable to work. Accordingly, Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD, 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given Petitioner has not received any opportunity to be heard as to the justification of his detention, Respondents have not articulated a legitimate interest in detaining Petitioner, and Respondents failed to comply with the procedural protections required by 8 U.S.C. § 1226(a). Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to any order of removal; his immigration proceedings and applications for relief are pending. In 2020, immigration authorities necessarily determined Petitioner was not a danger to the community or a flight risk to release him on his own recognizance. 8 C.F.R. § 1236.1(c)(8). There is no alternate finding in the record, or any argument that circumstances have changed, to override that finding. Indeed, since his release, Petitioner lived an additional nearly six years in the community without acquiring any criminal convictions. (*See* ECF No. 6 at 21–29.) Therefore, the risk that Petitioner is being detained without proper justification is high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Additionally, Respondents did not provide Petitioner with the procedural safeguards owed to him under § 1226(a) and violated their own statutes during Petitioners detention. *See Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003) ("ICE, like any agency, 'has the duty to follow its own federal regulations.'");

*see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (reversing dismissal of habeas petition where Board of Immigration Appeals failed to follow its own regulations). Under § 1226(a), a noncitizen may be arrested and detained only "on a warrant issued by the Attorney General . . . pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also* 8 C.F.R. § 1236.1(b)(1) ("[A noncitizen] may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest."). Thus, an administrative warrant must be issued prior to a noncitizen's arrest, absent an exception. *See Trevor J.M. v. Warden of the Cal. City Det. Facility*, No. 1:26-CV-04364-TLN-CSK, 2026 WL 2410039, at *2 (E.D. Cal. Aug. 18, 2026) (finding same); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)"). Here, even though authorities intentionally targeted Petitioner, they did not obtain an administrative warrant prior to arresting him in violation of 8 U.S.C §1226(a) and 8 C.F.R. § 1236.1(b)(1). In fact, it appears they never obtained a warrant at any time because Respondents were not able to provide such document. (ECF No. 10.) Additionally, it appears on the record (absent a Form I-286) that Respondents have not provided any initial custody determination as required by statute. *See Zurita Navarro* v. *Warden Ctrl. Valley Annex Det. Facility*, No. 1:26-CV-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026) (enumerating procedural violations of § 1226(a), including "failure to provide the petitioner with an initial custody determination either prior to or contemporaneously with detention," and collecting cases). Thus, Respondents have also failed to comply with § 1226(a)'s procedural safeguards in detaining Petitioner. Therefore, the Court finds the probative value of additional procedural safeguards here is high.

Third, and finally, the government's interest in detaining Petitioner without any hearing is nil, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. And the government has no interest in detaining persons in violation of their own statutes. Notice and custody determination hearings

are routine processes for Respondents and are indeed the very processes required under § 1226(a). Moreover, any delay in detention (if justified) for the time to provide pre-deprivation notice and a hearing would have been minimal. Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

Under the *Mathews* factors, Respondents were required to provide notice and a pre-deprivation hearing before a neutral decisionmaker. The U.S. Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case." (*See generally* ECF Nos. 6, 10.)

Respondents have not provided Petitioner with any notice or any custody hearing in over seven weeks of detention. Respondents thus violated the Fifth Amendment and Petitioner's procedural due process rights.

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is hereby GRANTED. It is FURTHER ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner (A# 201-581-729) from custody under the same terms as his 2020 release. At the time of release, Respondents must return all of Petitioner's documents and possessions. Respondents shall file a **notice of compliance** with this provision no later than **September 24, 2026**.
2. Respondents are ENJOINED from re-detaining Petitioner, while subject to 8 U.S.C. § 1226(a), absent compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention

such that no alternative to detention can mitigate that risk. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present.

3. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is DENIED as moot.
4. The Clerk of Court shall serve this Order on **Central Valley Annex Detention Facility**.
5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: September 21, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE